## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY JACKSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>CONSUMER ADVOCACY CENTER INC. d/b/a PREMIER STUDENT LOAN CENTER,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**PUTATIVE CLASS ACTION** |

### INTRODUCTION

Plaintiff Jeremy Jackson brings this class action against defendant Consumer Advocacy Center Inc. d/b/a Premier Student Loan Center ("Defendant") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.     This putative class action is brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") and the Pennsylvania Telemarketer Registration Act and stems from Defendant's practice of harassing consumers nationwide with automated and prerecorded telemarketing calls and unsolicited telemarketing text messages.

2.     Defendant purportedly sells student loan services nationwide.  To drum-up new business, however, Defendant engages in intrusive and unlawful telemarketing campaigns.

3.     Defendant engages in illegal telemarketing, targeting individuals nationwide, without their prior express consent and with little regard for their privacy.

4.     Through this putative class action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct which has resulted in the harassment, aggravation, and disruption of the daily life of

1

thousands of individuals nationwide.  Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6.      Venue is proper in the United States District Court for the Middle District of Pennsylvania pursuant to 18 U.S.C. § 1391(b) because Defendant regularly conduct business throughout the Commonwealth of Pennsylvania and a substantial part of the events giving rise to the claim accrued in this judicial district.

## PARTIES

7.      Plaintiff Jeremy Jackson ("Plaintiff") is a natural person who, at all times relevant to this action, was a citizen of Pennsylvania.

8.      Defendant Consumer Advocacy Center Inc. d/b/a Premier Student Loan Center ("Defendant") is a foreign corporation duly organized under the laws of the State of California with its principal place of business at 173 Technology Drive, Irvine, California 92618.

9.      Defendant directs, markets, and provides its business activities throughout the United States, including Pennsylvania.

## THE TELEPHONE CONSUMER PROTECTION ACT

10.     The TCPA regulates and restricts the use of automatic telephone equipment.

11.     The TCPA protects consumers from unwanted calls that are made with autodialers and/or prerecorded messages.

12.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using

an automatic telephone dialing system **or** prerecorded message; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

13.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14.     In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102-243, § 11.

15.     In support of this, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

16.     Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13.

17.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

18.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.

19.     According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.   The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

20.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

21.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent....and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

22.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

23.     In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814,

820 (8th Cir. 2015).

24.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

25.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

26.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

27.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

28.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

29.     The TCPA also expressly applies to text messages.

30.     Congress recognized that not only can unsolicited calls and text messages be a nuisance, but also may cause the receiver of the unsolicited communications to incur actual out-of-pocket losses.

31.     With the advancement of technology, numerous courts have recognized the TCPA's applicability to unsolicited text messages to persons' cellular telephones.

32.     Persons, like Plaintiff herein, have no control to stop unsolicited and unwanted text messages to their cell phones.

33.     Every transmission of a text message uses data, and the longer the text is, the more data is used.

34.     Once an unsolicited text message is received, not only is it a nuisance to the receiver, but as importantly, that receiver is forced to incur unwanted message and/or data charges from their cell phone carrier.

35.     As set forth herein, that is exactly what occurred to Plaintiff and other members of the putative class.

36.     Plaintiff and the members of the proposed class received unsolicited marketing text messages from Defendant, and consequently incurred additional message and/or data charges to their cell phone accounts, all because Defendant wished to advertise and market its products and services for its own benefit.

37.     Moreover, the Plaintiff and the proposed class suffered, *inter alia*, aggravation, frustration and annoyance.

38.     "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients.  A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. Jan. 30, 2017)

(quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016)) (emphasis in original).

## THE UNIFORM POLICIES OF DEFENDANT
## THAT GIVE RISE TO THE CAUSE OF ACTION

39.     On December 9, 2017, Defendant transmitted the following unsolicited text message to Plaintiff's cellular telephone ending in – 0282 (the "0282 Number"):

> Alert: You?re pre-qualified for Student
> Loan Forgiveness.  Please call us at
> 888-997-3868 to resolve your debt.
> stop2stop

40.     Ten days later, on December 19, 2017, the Defendant further harassed Plaintiff by sending another unsolicited text message to the 0282 Number indicating:

> Alert: You?re pre-qualified for Student
> Loan Forgiveness.  Please call us at
> 855-419-7790 to resolve your debt.
> stop2stop

41.     Frustrated by unsolicited advertisements and determined to learn the identity of the company that was harassing him, Plaintiff called 888-997-3868 and was connected with "Rosie" at "Premier Student Loan Center."

42.     Thereafter, on February 20, 2018, Plaintiff received an unsolicited call from the following spoofed[1] telephone number: 814-337-0489.

43.     Plaintiff was disrupted by the call and had to stop what he was doing to answer his phone.

44.     Upon answering the call, Plaintiff encountered a pause followed by a "beep." He was then transferred to a person named "Genea," who was marketing purported student loan services.

---

[1] "Spoofing occurs when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity." https://www.fcc.gov/consumers/guides/spoofing-and-caller-id.

45.    Thereafter, Genea sent Plaintiff a follow up email regarding its services from the following email address: "geneam@premierstudentloancenter.com."

46.    In response, Plaintiff requested that the Defendant no longer contact him and/or send unsolicited telemarketing.

47.    As alleged with specificity herein, Defendant's calls and text messages constitute telemarketing as Defendant was attempting to market and sell its student loan services.

48.    The telephone number to which Defendant, or its agents, sent the above text messages was assigned to a cellular telephone service for which Plaintiff incurs a charge pursuant to 47 U.S.C. § 227(b)(1).

49.    Plaintiff is not a customer of Defendant and has not purchased or used any goods or services offered by Defendant at any time prior to the filing of this Complaint.

50.    Nevertheless, Defendant, or its agents, sent the above unsolicited text messages that included an advertisement.

51.    Defendant, or its agents, sent the above unsolicited text messages that introduced an advertisement.

52.    Defendant, or its agents, sent the above unsolicited text messages that constituted telemarketing.

53.    Because the text messages at issue "includes or introduces an advertisement or constitutes telemarketing," Defendant was required to obtain Plaintiff's "prior express consent," as defined under the TCPA, before transmitting the text messages.

54.     Under the TCPA, "prior express consent" is defined as:

> an agreement, in writing, bearing the signature of the person called that
> clearly authorizes the seller to deliver or cause to be delivered to the
> person called advertisements or telemarketing messages using an
> automatic telephone dialing system or an artificial or prerecorded voice,
> and the telephone number to which the signatory authorizes such
> advertisement or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8).

55.     Plaintiff never signed any type of agreement whatsoever with the Defendant.

56.     As such, Plaintiff never gave prior express consent to receive Defendant's advertisements.

57.     Plaintiff further alleges that Defendant, or its agents, sent the above texts not only to Plaintiff, but also to numerous other individuals, on their cellular telephones, without obtaining their prior express consent.

58.     The texts were sent to Plaintiff and the putative class for general marketing purposes, for the commercial benefit of Defendant, and specifically to solicit the sale of Defendant's student loan services.

59.     The texts were **not** sent to Plaintiff and the putative class for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

60.     The text messages sent to Plaintiff and the putative class was sent via an ATDS, as defined by 47 U.S.C. § 227 (a)(1) and as prohibited by 47 U.S.C. § 227 (b)(1)(A).

61.     This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

62.     As outlined herein, the unsolicited commercial texts sent by Defendant or its agents to Plaintiff and the putative class violated 47 U.S.C. § 227(b)(1).

63.     Further, Plaintiff successfully registered his phone number ending in -0282 with the

National Do-Not-Call Registry on December 4, 2006.

64.     Nevertheless, Defendant placed multiple calls soliciting its business to Plaintiff on his cellular telephone ending in -0282 as alleged with specificity herein.

65.     Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

66.     In addition, Plaintiff successfully registered his phone number ending in -0282 on the Pennsylvania Do Not Call List on August 18, 2016.

67.     Upon receipt of his registration, Plaintiff received the following message from the Pennsylvania Attorney General's email address of noreply@attorneygeneral.gov:

> Thank you for registering your phone number on the Pennsylvania's Do Not Call list. As you know, the Do Not Call list offers citizens the opportunity to avoid the most unwanted telemarketing calls.  Under the law, the list is updated on a quarterly basis, and the telemarketers have 30 days to remove new numbers from their call list once the quarterly list becomes available. Your information has been received, and the updated Do Not Call lists will be available to telemarketers on October 1, 2016.

68.     Nevertheless, Defendant placed multiple calls soliciting its business to Plaintiff on his cellular telephone ending in -0282 as alleged with specificity herein.

69.     Such calls constitute solicitation calls as they were attempts to promote or sell Defendant's services.

70.     Plaintiff is the subscriber and sole user of the 0282 Number, and is financially responsible for phone service to the 0282 Number.

71.     Other recipients of Defendant's unsolicited calls, aggravated by the nuisance, disruption, and invasion of their privacy, have voiced their complaints in various on-line forums.  The following is a small sample of the complaints posted by consumers relating to Defendant:

- They keep calling me with a recording.  Tried to sell me the same crap that's in the suspiciously lonely 5-star rating here.  I heard them out, waited for the information, and made my decision to leave this review.

10

They continued to ask for my FSA ID or account information, even asking me if I remembered by password. "Nope, sorry, I forgot my password, what's an FSA ID?" They offered to set up an account for me, how nice of them... They couldn't understand how I'd "forget" my email address or password, yet when I asked for their company's name, the rep fumbled as if he had to look it up. Probably because they change their name every 6 months to avoid too may bad reviews.

These companies scam people to get into their account and change information, often preventing you from paying your loans if no through them. I have reported them to the CFPB and the FTC. Good riddance!

- I never signed up to receive any kind of student loan forgiveness program. I have absolutely no problems with my student loans I have and never signed up for any sort of forgiveness. But I keep getting phone calls and text messages from the Premier Student Loan Center even when I opt out and I am in the national do not call list, they ignore my requests. They claim someone "sold my information" instead of accepting the blame since they still accepted my illegal information and continue to market to me every month even when I opt out, and stealing my personal information. This is a very poor marketing tactic and very illegal. You have to have written confirmation to send marketing text messages in the United States I know this because of my job. Do not trust this company what so ever! What they are doing is an invasion of privacy and very illegal.

- Total Scam. Calling multiple times a day to sell their scam student loan service. My number is on the DNC list. No legitimate company would do this.

- scam telemarketers violating 47 USC 227.
  The CEO is Albert Kim.[2]

72.     Because other individuals have received the same unsolicited, prerecorded messages and text messages, Defendant has clearly used prerecorded messages and sent text messages *en masse* to harass thousands of individuals across the country.

73.     Further, the impersonal and generic nature of Defendant's calls and prerecorded messages demonstrates that Defendant utilized an ATDS in making the calls.

74.     Upon information and belief, Defendant utilized a combination of hardware and

---

[2] https://www.facebook.com/premierstudentloancenter/

software systems to make the calls at issue in this case. The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

75.    Through its telemarketing calls and text messages, Defendant violated Plaintiff's substantive rights under the TCPA.

76.    Further, Plaintiff suffered the following injuries:

      a.   Inconvenience;

      b.   Unwanted occupation of his time and mental energy;

      c.   Unwanted occupation of his cellular telephone;

      d.   Nuisance;

      e.   Trespass on his cellular telephone; and

      f.    Aggravation and annoyance.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

77.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

78.    Plaintiff brings this case on behalf of a Class defined as follows:

**All persons within the United States who, within the four years prior to the filing of this Complaint, received a telephone call or text message made through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, promoting Defendant's goods or services, to said person's cellular telephone number, who had not expressly consented in writing to receiving such calls.**

79.    The class concerning the National Do-Not-Call violation (hereinafter the "DNC Class") is defined as follows:

> **All persons within the United States registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendant prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint.**

80.    The class concerning the Pennsylvania Do-Not-Call violation (hereinafter the "PA DNC Class") is defined as follows:

> **All persons within the United States registered on the Pennsylvania Do-Not-Call Registry, who had not granted Defendant prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint.**

81.    The class concerning the Pennsylvania Telemarketer Registration Act violation (hereinafter the "PA TRA Class") is defined as follows:

> **All Pennsylvania citizens, who had not granted Defendant prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within four years prior to the filing of the complaint.**

82.    Defendant and its employees or agents are excluded from the Class, the DNC Class and the PA DNC Class, PA TRA Class (hereinafter collectively referred to as the "Classes"). Plaintiff does not know the number of members in the Classes, but believes the members of the Classes number in the several thousands, if not more.

<u>NUMEROSITY</u>

83.    Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Classes, therefore, are believed to be so

numerous that joinder of all members is impracticable.

84.     Upon information and belief, Defendant has sent text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

85.     The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery.  Identification of the members of the Classes is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

86.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes.  Among the questions of law and fact common to the Classes are:

> (1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant made non-emergency prerecorded calls to Plaintiff's and Class members' cellular telephones;
>
> (3) Whether Defendant can meet its burden of showing that it obtained prior express consent to make such calls;
>
> (4) Whether Defendant's conduct was knowing and willful;
>
> (5) Whether Defendant is liable for damages, and the amount of such damages; and
>
> (6) Whether Defendant should be enjoined from such conduct in the future.

87.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely violates the TCPA is correct, Plaintiff and the members of the Classes

14

will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

88.     Plaintiff's claims are typical of the claims of the members of the Classes, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

89.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

90.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Classes prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

91.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

92.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

93.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

94.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls to the cellular telephones of Plaintiff and Class Members.

95.     Defendant – or third parties directed by Defendant – made prerecorded or artificial voice calls to the cellular telephones of Plaintiff and Class Members.

96.     These calls were made without regard to whether Defendant had first obtained express written consent to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and Class Members when the subject calls were made.

97.     Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system and/or an artificial or prerecorded voice to make marketing telephone calls to the cell phones of Plaintiff and Class Members without their prior express written consent.

98.     As a result of Defendant's conduct, and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

16

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
#### (On Behalf of Plaintiff and the Class)

99.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

100.    At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

101.    Defendant knew that it did not have prior express written consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system, and/or that it was using an artificial or prerecorded voice in violation of the TCPA.

102.    Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed/prerecorded calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

103.    As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III
### Negligent Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §227(c)
#### (On Behalf of the DNC Class)

104.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

105.    The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227 (c)(5).

106.    As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff and the

DNC Class Members are entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

107.   Plaintiff and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT IV
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §227 et seq.
### (On Behalf of the DNC Class)

108.   Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

109.   The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(c), in particular 47 U.S.C. § 227 (c)(5).

110.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the DNC Class members are entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

111.   Plaintiff and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT V
### Violation of the Pennsylvania Telemarketer Registration Act
### (On Behalf of the PA TRA Class)

112.   Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

113.   As alleged with specificity herein, Defendant initiated certain outbound telephone calls to Plaintiff and caused spoofed telephone numbers to appear on Plaintiff's Caller Identification

114.   As such, the Defendant violated the Pennsylvania Telemarketer Registration Act, 73

P.S. §§2241 – 2249 ("TRA").

115.    Specifically, Defendant violated §2245.1 "Blocking of caller identification and other telemarketing screening products or services prohibited."

116.    Under §2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq*.

117.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TRA.

118.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. §201-9.2(a).

119.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendant willfully and/or knowingly violated the TRA.  As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 §201-9.2(a).

120.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 §201-9.2(a).

**COUNT VI**
**Violation of the Pennsylvania Telemarketer Registration Act**
**(On Behalf of the PA TRA Class)**

121.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

122.    As alleged with specificity herein, Defendant initiated certain outbound telephone calls to Plaintiff and failed to promptly disclose during the initial telephone contact the name of the telemarketer.

123.    As such, the Defendant violated the Pennsylvania Telemarketer Registration Act, 73

P.S. §§2241 - 2249 ("TRA").

124.    Specifically, Defendant violated §2245(a)(5).

125.    Under §2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade

and Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq.*

126.    The foregoing acts and omissions of Defendant constitute numerous and multiple

violations of the TRA.

127.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class

members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to

73 P.S. §201-9.2(a).

128.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class

members were further damaged because Defendant willfully and/or knowingly violated the TRA.  As

such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under

the statue for the willful or knowing violations under 73 §201-9.2(a).

129.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class

members are also entitled to reasonable attorneys' fees and costs under 73 §201-9.2(a).

**COUNT VII**
**Violation of the Pennsylvania Telemarketer Registration Act**
**(On Behalf of the PA TRA Class)**

130.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as

though fully stated herein.

131.    As alleged with specificity herein, Defendant engaged in several abusive telemarketing

acts and practices that violated provisions of 16 CFR 310 (relating to telemarketing sales rule).

132.    Because these abusive telemarketing acts violated provisions of 16 CFR 310 (relating

20

to telemarketing sales rule), the Defendant violated §2245(a)(9) of the TRA.

133.    Under §2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. §201-1 et seq.

134.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TRA.

135.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. §201-9.2(a).

136.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendant willfully and/or knowingly violated the TRA. As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 §201-9.2(a).

137.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 §201-9.2(a).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on Plaintiff's own behalf and on behalf of the Class members, respectfully pray for the following relief:

a.    On the First Count for Negligent Violations of the TCPA, 47 U.S.C. §227(b)(1), Plaintiff seeks for himself and each Class member: (i) $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

b.   On the Second Count for Knowing and/or Willful Violations of the TCPA, 47 U.S.C. §227(b)(1), Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C) as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227 (b)(1); injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

c.   On the Third Count for Negligent Violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiff seeks for himself and the Class members: (i) $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(c)(5) as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

d.   On the Fourth Count for Knowing and/or Willful Violations of the TCPA, 47 U.S.C. §227(c)(5), Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(c)(5) as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

e.   On the Fifth Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. §201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper; and

f.      On the Sixth Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. §201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper; and

g.      On the Seventh Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. §201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  July 11, 2018                                   **DeNITTIS OSEFCHEN PRINCE, P.C.**

                                                By:     s/ Stephen DeNittis
                                                        Stephen P. DeNittis, Esq. (SD-0016)
                                                        Ross H. Schmierer, Esq (RS-7215)
                                                        (*Pro Hac Vice* Admission Forthcoming)
                                                        1515 Market Street, Suite 1200
                                                        Philadelphia, PA 19102
                                                        (T): 215-564-1721
                                                        sdenittis@denittislaw.com

                                                        *Attorneys for Plaintiff*